UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

TODD JOHNSON,

               Petitioner,

   - against -

HAROLD GRAHAM,

               Respondent.

------------------------------------------------------X

**MEMORANDUM
OPINION AND ORDER**

09 Civ.  5838 (SAS) (KNF)

```
USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #: _____
DATE FILED: 10/1/10
```

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

       Petitioner Todd Johnson, proceeding pro se, filed a  petition for a writ

of habeas corpus (the "Petition") pursuant to section 2254 of Title 28 of the United

States Code (hereinafter "section 2254").  In support of his Petition, Johnson raises

the following grounds: (1) the People of the State of New York (the "People")

failed to establish, at a pre-trial *Mapp/Dunaway* hearing, that there was probable

cause for Johnson's arrest;[1] (2) the state trial court committed reversible error by

failing to respond to a jury note that requested "all the evidence pertaining to the

case;"[2] and (3) the state court violated Johnson's due process right to a fair trial by

improperly consolidating an indictment which charged Robbery in the Second

---

[1]     *See* Petition, Ground One.

[2]     *See id.*, Ground Two.

Degree with an indictment which charged Criminal Possession of Stolen Property.[3]

After Respondent submitted opposition papers, I referred the Petition to Magistrate Judge Kevin N. Fox for a Report and Recommendation. On June 11, 2010, Judge Fox issued a Report and Recommendation (the "R&R") in which he recommends that Johnson's Petition be denied in its entirety. Shortly thereafter, Johnson submitted a Request for an Extension of Time to file objections to the R&R. I granted Johnson's request and gave him until July 30, 2010, in which to file objections. Johnson filed his Objections and Exceptions to Magistrate Judge's Findings of Fact and Recommendations (the "Objections") on July 28, 2010. Because Johnson has objected to each and every recommendation contained in the R&R, I have reviewed the entire R&R *de novo*.[4] For the following reasons, I find all of the Objections to be without merit. Accordingly, I hereby adopt the R&R and dismiss Johnson's petition for a writ of habeas corpus.

## I.    BACKGROUND[5]

On December 14, 2004, Phil Simmons was robbed by three black men

---

[3]      *See id.*, Ground Three.

[4]      *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

[5]      Although a full account of the factual and procedural history of this case is contained in the R&R, familiarity with which is assumed, certain portions will be recounted so that I may coherently address petitioner's Objections.

who took three $50 bills and a Metrocard from him.  Shortly thereafter, Michael

Wright, who presumably witnessed the attack, alerted four undercover police

officers that the assailants were walking down the block where they were parked.

When Johnson was apprehended, Police Officer Michael Carey recovered three

Metrocards and one $50 bill from his person.  It was later discovered that two of

the Metrocards had been purchased with a credit card stolen from Raul Ruiz.  Ruiz

had been robbed four days earlier in the same neighborhood, and around the same

time, where the Simmons robbery took place.  Neither Simmons nor Ruiz could

identify any of their assailants.

The People moved to consolidate the two Indictments (one for the

robbery and the second for the possession of stolen property) pursuant to New

York Criminal Procedure Law §200.20(2)(b).[6]  Indictment 6879/2004 charged

Johnson with two counts of Robbery in the Second Degree for the Simmons

robbery.  Indictment 2716/2005 charged Johnson with two counts of Criminal

---

[6]     Two offenses based upon different criminal transactions may be
joined when they:

> are of such nature that either proof of the first offense
> would be material and admissible as evidence in chief upon
> a trial of the second, or proof of the second would be
> material and admissible as evidence in chief upon a trial of
> the first.

New York Crim. Proc. L. § 200.20(2)(b).

Possession of Stolen Property in the Fifth Degree for possession of the two

Metrocards allegedly purchased using Ruiz's stolen credit card. Johnson opposed

the consolidation on the grounds that it would be unduly prejudicial because the

Simmons robbery was unconnected to the possession of the two Metrocards.

The trial court nonetheless granted the People's motion to consolidate, stating:

> The indictments may be consolidated since evidence of the
> recovery of the metrocards is closely related to the evidence
> of the robbery.    Further, proof of possession of the
> metrocards is admissible to reveal the circumstances
> surrounding the arrest and to complete the narrative.[7]

Johnson proceeded to a trial by jury where he testified in his defense.

Jury deliberations began on March 27, 2006, just before the lunch recess. Before

the recess, the parties stipulated that the exhibits could be brought into the jury

room, if requested. Later that afternoon, the jury submitted a note which read:

"We the jury request all evidence pretaining [sic] to this case."[8] There is no

mention of this note in the trial transcript. In fact, in his appellate brief, appended

to the Petition, Johnson argues that the state court judge did not even see the note.[9]

---

[7]    See Decision & Order of Justice Rena K. Uviller, dated October 25, 2005, Ex. C to the Declaration of Assistant Attorney General Paul M. Tarr in Opposition to the Petition for a Writ of Habeas Corpus ("Tarr Decl.").

[8]    Record on Appeal, Court Exhibit 2.

[9]    See Brief for Defendant-Appellant ("Appellate Brief"), Ex. D to the Tarr Decl., at 31.

4

Despite the lack of a response to this note, the jury continued deliberating until it

reached a verdict.  Johnson was convicted of one count of second-degree robbery

(robbery aided by another); he was acquitted of one count of second-degree

robbery (based on physical injury) and the counts relating to possession of stolen

property.  On April 11, 2006, Johnson was sentenced as a second felony offender

to nine years in custody.

Johnson appealed his conviction, raising the same claims raised in the

instant Petition.  On December 20, 2007, the New York State Supreme Court,

Appellate Division, First Department, affirmed his conviction.  With regard to

Johnson's "jury note" claim, the First Department stated:

> On the existing record, the more reasonable conclusion is
> that the jury's request for the "evidence" was in fact a
> ministerial request for the exhibits.  It is unlikely that the
> jury would have immediately sought a readback of all the
> testimony given that the court had just finished advising the
> jury that when requesting a readback of testimony, it should
> "consider carefully what specific portions" of the testimony
> would be helpful "rather than asking for all of the
> testimony to be read back."  It also is unlikely that the jury
> would have silently acquiesced in its request being ignored
> for no apparent reason.  In fact, the jury's request for the
> "evidence" was never reiterated, and the jury subsequently
> requested a limited readback.[10]

With regard to the consolidation of indictments, the First Department opined:

---

[10]   *People v. Johnson*, 848 N.Y.S.2d 103, 105 (1st Dep't 2007).

Defendant was charged under indictment No. 6879/04 with two theories of robbery, that he robbed Phil Simmons while aided by another person (of which defendant was convicted), and that he caused physical injury to Simmons during the robbery (of which defendant was acquitted), and was charged under indictment No. 2716/05 with criminal possession of stolen property for possessing two Metrocards purchased with a credit card stolen from Raul Ruiz. On the particular facts of this case, the evidence that defendant possessed stolen Metrocards was material and admissible as evidence-in-chief in connection with the trial on the charges relating to the robbery of Simmons, and evidence of that robbery was material and admissible as evidence-in-chief in connection with the trial on the stolen property charges. Accordingly, and because proof of each crime was easily segregable in the minds of the jurors, the trial court did not improvidently exercise its discretion in ordering the consolidation of both indictments pursuant to CPL [§] 200.20(2)(b) and [§] 200.20(4). That defendant was acquitted of the stolen possession charges is further indication that defendant suffered no prejudice by the consolidation and that the jury was able to segregate the evidence as it related to each charge.[11]

The New York Court of Appeals denied Johnson leave to appeal on March 27, 2008.

## II.   LEGAL STANDARD

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). The AEDPA provides that a federal court can grant a writ of habeas corpus to a state prisoner only if the state court's denial

---

[11]   *Id.* at 105-06 (quotation marks and citations omitted).

of relief "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States."[12]  As explained by the Supreme Court, a state court decision is "contrary

to" clearly established federal law in the following instances:

> First, a state-court decision is contrary to this Court's
> precedent if the state court arrives at a conclusion opposite
> to that reached by this Court on a question of law.  Second,
> a state-court decision is also contrary to this Court's
> precedent if the state court confronts facts that are
> materially indistinguishable from a relevant Supreme Court
> precedent and arrives at a result opposite to ours.[13]

With regard to the "unreasonable application" prong, the Supreme Court has stated

that

> a state-court decision can involve an "unreasonable
> application" of this Court's clearly established precedent in
> two ways.  First, a state-court decision involves an
> unreasonable application of this Court's precedent if the
> state court identifies the correct governing legal rule from
> this Court's cases but unreasonably applies it to the facts of
> the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this
> Court's precedent if the state court either unreasonably
> extends a legal principle from our precedent to a new
> context where it should not apply or unreasonably refuses
> to extend that principle to a new context where it should
> apply.[14]

---

[12]     28 U.S.C. § 2254(d)(1).

[13]     *Williams v. Taylor,* 529 U.S. 362, 405 (2000).

[14]     *Id.* at 407.

In addition, determinations of factual issues by a state court "shall be presumed to be correct," thereby placing upon the petitioner "the burden of rebutting the presumption of correctness by clear and convincing evidence."[15]

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous: "[t]he state court's application of clearly established law must be objectively unreasonable."[16] This standard "'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"[17] While the test requires "'[s]ome increment of incorrectness beyond error, . . . the increment need not be great; otherwise *habeas* relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"[18] Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

---

[15]   28 U.S.C. § 2254(e)(1).

[16]   *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). *Accord Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[17]   *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[18]   *Jones*, 229 F.3d at 119 (quoting *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quotation marks and citations omitted)).

clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."[19]

## III. DISCUSSION

### A. Probable Cause for Johnson's Arrest

Petitioner's Fourth Amendment claim – that the People failed to establish probable cause for his arrest – is precluded from federal habeas review by the Supreme Court's holding in *Stone v. Powell.*[20] As explained by the Second Circuit, review of Fourth Amendment claims in habeas petitions is appropriate in only two instances: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."[21] An "unconscionable breakdown" occurs, for instance, where the state court "fail[s] to

---

[19]     *Williams*, 529 U.S. at 411.

[20]     *See* 428 U.S. 465, 481-82 (1976) (holding that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial").

[21]     *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

conduct a reasoned method of inquiry into relevant questions of fact and law."[22]

It is well-established that New York has adequate corrective procedures for litigating Fourth Amendment claims.[23] Therefore, federal courts "have no authority to review the state record and grant the writ simply because [they] disagree with the result reached by the state courts."[24] Here, Johnson was given a full and fair opportunity to litigate his Fourth Amendment claim. Johnson first raised the probable cause issue at the pre-trial *Mapp/Dunaway* hearing. And when the trial court ruled against him, Johnson appealed the lower court's ruling to the First Department on direct appeal. Contrary to Johnson's argument that there was a breakdown in the underlying process resulting from the prosecutor's failure to call Wright as a witness at the *Mapp/Dunaway* hearing,[25] Johnson fully utilized the corrective mechanisms afforded by the State of New York. It is the existence

---

[22]     *Id.* at 71 (quotation marks and citation omitted).

[23]     *See id.* at 70 n.1 (stating that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.*, . . . as being facially adequate") (quotation marks and citation omitted).

[24]     *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977). *Accord Cappellan*, 975 F.2d at 72 ("[A] mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process.").

[25]     *See* Objections at 9.

of corrective mechanisms, not the outcome, that is important. Accordingly, as correctly noted by Judge Fox,[26] Johnson's lack of probable cause claim is foreclosed from habeas review by this Court. Johnson's Objections regarding his Fourth Amendment claim are dismissed.

## B.      Missing Jury Note

Judge Fox found that Johnson's "jury note" claim – that the trial court's failure to respond to a jury note requesting "all evidence pertaining to this case" constituted "reversible error" – did not warrant habeas relief, stating:

> In the present case, the jury was not misinformed, nor was an impression made by the trial judge that might affect their deliberation – the jury continued to deliberate, based on its understanding and memory of the facts elicited at trial. The request for "all evidence" was extremely broad; and, the court's failure to provide the jury with a response to its note, while error, was not the type of error that would render the outcome untrustworthy or flawed. As noted above, the jury continued to deliberate, without a response, and, after submitting additional notes to the court seeking clarification of the elements of the charges and for readback testimony, reached a verdict. Without more, Johnson has not demonstrated that the trial judge's omission was of constitutional magnitude.[27]

---

[26]      *See* R&R at 12 (finding Johnson's claim that the police lacked probable cause for his arrest to be not cognizable in this habeas proceeding).

[27]      *See id.* at 16-17 (citing *Henderson v. Kibbe*, 431 U.S. 145, 153-54 (1977) (holding that the omission of a jury *instruction* on causation did not rise to the level of constitutional error).

Johnson objected to this finding, arguing that the trial court's failure to respond was not subject to harmless error analysis.[28]  Johnson argued that "[t]he failure to disclose the exact content of the jury's substantive inquiries was 'inherently prejudicial,' effectively depriving [petitioner] of an opportunity to evaluate those inquiries and to propose responses."[29]  Johnson described this error as a "mode of proceedings error" which affects "the framework within which a trial proceeds and thus the trial process itself."[30]

The problem with the analysis in the R&R, and Johnson's Objections thereto, lies in the nature of the claim presented.  The "jury note" claim, as described in the Petition, states: "The court committed reversible error when it utterly failed to respond to a jury note that sought 'all the evidence pertaining to the case[.]' As the record establishes that the court did not even see the note, resulting in a complete failure to follow the required jury note protocol."[31]

---

[28]    *See* Objections at 3.

[29]    *Id.* (citations omitted).

[30]    *Id.* (citing *Arizona v. Fulminate*, 499 U.S. 279, 309-10 (1991) (differentiating "trial errors" such as the admission of an involuntary confession, which are subject to harmless error analysis, from "structural defects" such as the total deprivation of the right to counsel at trial, "which defy analysis by 'harmless-error' standards").

[31]    Petition, Ground Two.

12

Moreover, the Appellate Brief appended to the Petition does not cite Supreme

Court precedent or any other federal cases.  Rather, the Appellate Brief cites

section 310.30 of the New York Criminal Procedure Law ("section 310.30") as

setting forth jury note protocol, followed by citations to *People v.  O'Rama*[32] and

*People v.  Kisoon*,[33] cases where the New York Court of Appeals applied section

310.30.

      In sum, Johnson complains that the state court failed to comply with

the procedures mandated in section 310.30.  Thus, whether or not this failure

constituted reversible error in the state court, petitioner's "jury note" claim does

not implicate a federally protected constitutional right. This is apparent from the

intermediate state-court Order affirming Johnson's conviction.[34]  The trial court's

alleged omission presents a question of state law that is not cognizable on federal

---

[32]    28 N.Y.2d 270 (1990).

[33]    8 N.Y.3d 129 (2007).

[34]    *See Johnson*, 848 N.Y.S.2d at 105 ("Defendant claims . . that the court failed to comply with the procedures mandated by CPL 310.30 in assertingly doing nothing in response to the note.") (citing *O'Rama*).

habeas review.[35]  Accordingly, this Court cannot review the merits of this claim.[36]

In sum,  although I agree with Judge Fox that the trial judge's alleged omission

does not constitute an error of constitutional magnitude, I decline to adopt the

reasoning that led him to this conclusion.  Nonetheless, Johnson's Objections

regarding his "jury note" claim are without merit.

### C.      Consolidation of Indictments

With regard to the joinder of defendants, the Supreme Court has

stated: "Improper joinder does not, in itself, violate the Constitution.  Rather,

---

[35]      *See Quezada v. Nichols*, No.  04 Civ.  2765, 2008 WL 818566, at *8
(S.D.N.Y. Mar. 26, 2008) ("To the extent that Quezada claims that the trial court
violated the requirements of New York Criminal Procedure Law Section § 310.30,
the Court may not review the merits of this claim on habeas review.").

[36]      *See Estelle v.  McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the
province of a federal habeas court to reexamine state-court determinations on state-
law questions.").  Assuming, *arguendo*, that petitioner's due process rights were
somehow implicated, the state court decision would withstand habeas review given
the lack of any clearly established federal law on the precise claim asserted by
petitioner.  Without a Supreme Court case setting forth the constitutional standard
for the handling of jury notes, the state court decision dismissing Johnson's "jury
note" claim cannot be contrary to, or involve an unreasonable application of,
"clearly established Federal law, as determined by the Supreme Court of the
United States." 28 U.S.C. § 2254(d)(1).  Alternatively, there is a strong argument
to be made that the First Department's findings regarding the jury note are findings
of fact entitled to the presumption of correctness. *See id.* § 2254(e)(1) ("[A]
determination of a factual issue made by a State court shall be presumed to be
correct.  The applicant shall have the burden of rebutting the presumption of
correctness by clear and convincing evidence.").  Thus, whether or not petitioner's
"jury note" claim is cognizable, it must be dismissed in any event on these
alternative grounds.

14

misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."[37] The reasoning of *Lane* has been extended to the joinder of indictments, as follows:

> Joinder of offenses rises to the level of a constitutional violation only if it *actually renders* Petitioner's state trial fundamentally unfair and hence, violative of due process. *See United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). In considering whether a violation of due process has occurred, the emphasis must be on the word "actually"; for, viewed clearly, it is only the consequences of joinder, over which the trial judge has much control, and not the joinder itself, which may render the trial "fundamentally unfair." *See United States ex rel. Evans v. Follette*, 364 F.2d 305, 306 (2d Cir. 1966) (per curiam) (decision to consolidate charges for trial does not itself raise an issue of constitutional dimension).  The Second Circuit has recognized that "[t]here is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all." *United States v. Lotsch*, 102 F.2d 35, 36 (2d Cir. [1939]) (L.Hand, J.).[38]

With regard to the prejudice inherent when more than one offense is joined in an indictment,

---

[37]     *United States v. Lane*, 474 U.S. 438, 446, n.8 (1986).

[38]     *McKinnon v. Conway*, No. 9:06-cv-00717-JKS, 2008 WL 1945342, at *4 (N.D.N.Y. May 1, 2008) (emphasis added, parallel citations omitted).

[t]he Supreme Court has explicitly accepted that "[t]his type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person . . . in the same trial is a valid governmental interest." *Spencer v. Texas*, 385 U.S. 554, 562 (1967). "Therefore, where a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during the joint trial." *Herring v. Meachum*, 11 F.2d 374, 378 (2d Cir. 1993) (emphasis in the original).[39]

Here, Johnson argues that "[t]he fact that the jury heard about two separate robberies in a single trial, gave the [jury the] idea to improperly infer that the defendant has a propensity to commit robberies."[40] However, the People never alleged that Johnson was involved in the Ruiz robbery. Moreover, the trial court instructed the jury to consider Ruiz's testimony "'only with regard to the counts of criminal possession of stolen property.'"[41] Apparently, the jury followed the trial court's instructions as its verdict further demonstrates the absence of prejudice

---

[39]     *Id.*

[40]     Objections at 4. *See id.* at 5 ("In sum, the prejudice resulting from consolidation was too great to justify the convenience of a single trial, and denied defendant his [F]ifth Amendment right to a fair trial.") (citing *Lane*, 474 U.S. at 446, n.8).

[41]     Appellate Brief at 47 (quoting Trial Transcript at 666).

16

from misjoinder. Johnson was acquitted of criminal possession of stolen property.

This shows that the jury considered the charges separately, distinguished between

the two indictments, and discounted Ruiz's testimony to the extent that it supported

the People's allegation that Johnson knowingly possessed stolen property.[42] Thus,

the First Department's ruling that joinder did not deprive Johnson of his due

process right to a fair trial is entitled to AEDPA deference.[43] Accordingly,

Johnson's Objections regarding the misjoinder of indictments must be dismissed.

## IV.  CONCLUSION

In sum, I agree with the conclusions reached by Judge Fox with

regard to all three of petitioner's claims, although I decline to adopt the reasoning

underlying Judge Fox's ruling of petitioner's "jury note" claim. With that

exception noted, I hereby adopt the Report and Recommendation. Johnson's

petition for a writ of habeas corpus is denied.

Finally, there is the issue of whether to issue a Certificate of

Appealability ("COA"). For a COA to issue, a petitioner must make a "substantial

---

[42]     *See Herring*, 11 F.3d at 378 ("Based on the instructions, the jury
seems to have carefully evaluated the evidence on each count separately; it
convicted petitioner on two of the counts, but acquitted him on the other two.").

[43]     Although not stated by Judge Fox *in haec verba*, this is the conclusion
he essentially reached. *See* R&R at 13 ("Johnson has not shown that the court's
determination to consolidate the indictments rendered his trial unfair
fundamentally.").

showing of the denial of a constitutional right."[44]  A "substantial showing" does

not require a petitioner to demonstrate that he would prevail on the merits, but

merely that reasonable jurists could debate whether "the petition should have been

resolved in a different manner or that the issues presented were 'adequate to

deserve encouragement to proceed further.'"[45]  Petitioner has made no such

showing.  Accordingly, I decline to grant a certificate of appealability.  The Clerk

of the Court is directed to dismiss the instant Petition and close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 1, 2010

---

[44]     28 U.S.C. § 2253(c)(2).

[45]     *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

## - Appearances -

**Petitioner (Pro Se):**

Todd Johnson
# 06-A-2361
Arthur Kill Correctional Facility
2911 Arthur Kill Road
Staten Island, NY 10309

**For Respondent:**

Paul M. Tarr
Assistant Attorney General
Office of the Attorney General
120 Broadway
New York, NY 10271
(212) 416-8785